HALLER et al., Appellants,

v.

PHILLIPS, Appellee.

[Cite as *Haller v. Phillips* (1990), 69 Ohio App.3d 574.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–512.

Decided Sept. 27, 1990.

*Jerry Weiner Legal Services Co., L.P.A.,* and *Jerry Weiner,* for appellants.

*Hamilton, Kramer, Myers & Cheek, Austin P. Wildman* and *Mitchell M. Tallan,* for appellee.

McCormac, Judge.

Plaintiffs-appellants, Jack and Bonnie Haller, appeal from the judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, James E. Phillips, and raise the following sole assignment of error:

"The decision granting appellee's motion for summary judgment was against the manifest weight of the evidence and contrary to law."

The facts of the Hallers' civil action presently before the court are intertwined with and closely related to a criminal proceeding in which appellant, Jack Haller, was a defendant. On July 8, 1985, the Franklin County Grand Jury indicted Haller on charges that he had committed extortion against Donald Borror. The following day, a warrant was issued and Haller was arrested. Haller's attorney contacted Judge Sidney Golden, who released Haller on a recognizance bond on the condition that Haller would appear the following morning to determine bail.

During the course of the criminal investigation of Haller, Donald Borror, the complaining witness, retained attorney Phillips to advise him regarding the investigation. On July 9, 1985, the day of Haller's arrest, Borror contacted Phillips and requested that he determine the circumstances of Haller's arrest and whether he had been released. Phillips then allegedly contacted Haller's attorney who informed Phillips of the recognizance bond. Phillips then contacted Judge Golden to express his concern as to whether the police or prosecutor had been allowed any input concerning the bond. Haller alleges that, during the course of the conversation, Phillips told Judge Golden that Haller had made threats against the life of Borror. Phillips denies this allegation.

On July 10, 1985, Haller appeared before Judge Jenkins as required by his bond. Haller contends that when he appeared he was rearrested since Judge Golden, in reliance on Phillips' statements, caused his bond to be revoked. Subsequently, a surety bond of $20,000 was set. After posting the required amount, Haller was released.

On the day of Haller's rearrest, the Columbus Citizen–Journal ran an article stating that Judge Golden had set a recognizance bond of $50,000 at the urging of Borror's attorney. The article went on to quote Judge Golden as saying Phillips had told him of threats against Borror's life. By affidavit, Judge Golden denied that Phillips had made these remarks to him. The Citizen–Journal was not made a party to this action. Counts one and two of Haller's complaint herein are predicated upon the statements Phillips allegedly made to Golden.

Count three of Haller's complaint is based upon a telephone call Phillips allegedly made to Haller's home on February 26, 1987. Haller contends that Phillips called his residence and, when appellant Bonnie Haller answered, Phillips called Haller a "son of a bitch" and asked if the "son of a bitch was home." Phillips denies making the phone call or the statements. Mrs. Haller contends that she suffered emotional and physical trauma and was extremely upset as a result of Phillips' remarks.

On February 25, 1988, appellants filed their complaint. On November 6, 1988, Phillips filed a motion for judgment on the pleadings as to counts one and two of appellants' complaint, as well as a motion for summary judgment addressed to all three counts of the complaint.

By entry dated April 9, 1990, the court sustained both of Phillips' motions and dismissed appellants' action.

The Hallers assert that it was error for the trial court to grant Phillips' motion for summary judgment. They argue that a material question of fact arises as to whether Phillips made the disputed remarks to Golden and, if he did, whether they were slanderous. The Hallers further contend that the remarks were not privileged statements made as a part of the judicial proceeding.

■ The trial court sustained Phillips' motion for summary judgment and motion for judgment on the pleadings but did not differentiate which claims were being dismissed by which motion. Regardless of what basis for dismissal was used, we conclude that counts one and two of the Hallers' complaint, alleging slander, malicious prosecution and false imprisonment, were barred by the statute of limitations and were, therefore, properly dismissed.

R.C. 2305.11(A) provides, in part:

"(A) An action for libel, slander, malicious prosecution, false imprisonment, or malpractice, including an action for malpractice against a physician, podiatrist, hospital, or dentist, or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued * * *."

Phillips' alleged remarks to Golden, which gave rise to counts one and two of the Hallers' complaint, were made on July 9, 1985. The Hallers did not file their complaint until February 25, 1988, well beyond the one-year period in which R.C. 2305.11(A) permits an action to be commenced. Since counts one and two were time-barred, it is not necessary to address the merits of the claims.

Liberally construing count three of appellants' complaint, it states causes of action sounding in invasion of privacy, intentional infliction, and negligent infliction of emotional distress. The trial court found that no material issue of fact was presented concerning count three and granted summary judgment in Phillips' favor.

The Ohio Supreme Court first recognized an actionable right of privacy in *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340. Paragraph two of the syllabus in *Housh* provides:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private

affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

Subsequent opinions of the Supreme Court have adopted the reasoning of the Restatement of Torts. See *Sustin v. Fee* (1982), 69 Ohio St.2d 143, 23 O.O.3d 182, 431 N.E.2d 992. The Restatement of the Law 2d, Torts (1977) 376, Section 652A provides four theories of liability based upon an intrusion of one's right of privacy. Liability may be predicated on an unreasonable intrusion upon the other's right to seclusion, misappropriation of another's name or likeness, unreasonable publicity given to another's private affairs, or liability under a false light theory. The present action represents an attempt to impose liability based upon the first predicate, an unreasonable intrusion.

Section 652B of the Restatement applies to this cause of action and states that:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

The Supreme Court echoed this reasoning in *Housh, supra,* when it wrote that " * * * the wrongful intrusion into one's private activities * * * [must be] * * * in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* at paragraph two of the syllabus.

■ Appellants argue that their right to privacy was invaded by a single phone call from Phillips wherein he allegedly referred to Haller as a "son of a bitch." Since we are reviewing a motion for summary judgment, we must assume that the call was made and that the alleged language was used. It is beyond doubt that the language, if used, was rude and abusive. However, to sustain a cause of action for an invasion of privacy, more than rude language must be shown. It must be of such a character as would shock the ordinary person to the point of emotional distress. Regrettably, in our society, foul language has been relegated to the level of slang. The language that Phillips is alleged to have used, on the *one* occasion he purportedly used it, is legally insufficient to state a cause of action for invasion of privacy, not rising to the character that would support an actionable intrusion.

A similar standard is applicable to claims of intentional infliction of emotional distress. The Supreme Court, again citing the Restatement of Torts 2d, stated that:

" * * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 375, 6 OBR 421, 426, 453 N.E.2d 666, 671.

We again conclude that appellee's use of foul language does not "go beyond all possible bounds of decency" and, as a matter of law, would not be considered outrageous by an average member of the community.

Appellants also claim negligent infliction of emotional distress as a basis for Phillips' liability. Ohio courts have recognized negligent infliction of emotional distress may provide the basis for a claim for relief. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109; *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759. These cases involved a bystander to an accident rather than a person who claims to be a victim of an intentional tort. When the alleged claim involves allegedly tortious conduct of an intentional nature, negligent infliction of emotional distress does not apply. The principles applicable to intentional infliction of emotional distress are applicable.

Additionally, even if negligent infliction applies, there was no serious emotional distress as required by paragraph two of the syllabus of *Paugh v. Hanks, supra,* which reads:

"A cause of action may be stated for the negligent infliction of serious emotional distress without the manifestation of a resulting physical injury. Proof of a resulting physical injury is admissible as evidence of the degree of emotional distress suffered."

The *Paugh* court cited examples of serious emotional injury, including neurosis, psychosis, chronic depression, or phobia, to aid courts in their analysis. Appellants have shown that Mrs. Haller was upset by Phillips' remarks but that proof falls short of the requirement of *serious* emotional distress.

Appellants' assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and JOHN C. YOUNG, JJ., concur.